UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KENNETH W. ELLIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:11-cv-1677-WTL-MJD |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Kenneth W. Ellis requests judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Insurance Benefits ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court now rules as follows.

### I.   BACKGROUND

On March 9, 2007, Ellis filed for SSI and DIB, alleging that he had been disabled since February 23, 2007. Ellis's applications were denied initially on June 8, 2007, and again on reconsideration on July 16, 2007. Following the denial on reconsideration, Ellis requested and received a hearing in front of an Administrative Law Judge ("ALJ"). A hearing, during which Ellis was represented by counsel, was held on October 6, 2009. ALJ L. Zane Gill presided over the hearing and Howard Steinberg testified as a vocational expert. On April 26, 2010, the ALJ issued a decision denying Ellis benefits. The Appeals Council denied a request for review on October 28, 2011, after which Ellis filed this timely appeal.

Ellis's medical background has been set out in detail by the Commissioner. As Ellis does not object to the Commissioner's background statement, it is set forth in pertinent part below.

In November 2005, Ellis was diagnosed with probable smoking-induced lung disease (COPD/emphysema), which was confirmed by a chest x-ray. In January 2006, Dr. Saqib Rashid reported that pulmonary function studies showed either normal results or mild to moderate changes. March 2006 chest x-rays showed no active chest disease, and a March 2007 chest x-ray revealed no active infiltrate in Ellis's lungs. In April 2007, it was noted that Ellis's wheezing had diminished and he was breathing easier following a breathing treatment.

In June 2007, Dr. Wail Bakdash noted that Ellis reported oxygen use at 3 liters per minute all the time, but he did not come to the exam with it. According to Dr. Bakdash, Ellis reported that he did not own a portable oxygen unit. During the exam, Dr. Bakdash noted that Ellis was able to get on and off the examination table without difficulty. Although Ellis had wheezing, Dr. Bakdash reported normal breath sounds. Ellis's gait and posture were also normal, and he was able to stand on his heels and toes without difficulty. Spirometry testing indicated mild obstruction. Dr. Bakdash opined that Ellis could grasp, lift, carry, manipulate objects in both hands, perform repeated movements with both feet, bend over without restriction, squat normally, and could sit, stand, and walk normally.

Also in June 2007, Dr. Robert Irick penned a letter indicating that Ellis had severe COPD/emphysema (which was irreversible), chronic bronchitis with frequent exacerbations, and severe anxiety. He opined that Ellis should be off work until medically released by him. Also in June 2007, Dr. J. Sands reviewed Ellis's medical evidence and opined that his physical impairments were not severe. In July 2007, Dr. B. Whitley reviewed Ellis's medical evidence and affirmed Dr. Sands' assessment. In October 2007, a nurse practitioner completed a

2

pulmonary residual functional capacity questionnaire opining that Ellis could sit and stand continuously for two hours each, could sit and stand/walk for two hours each in an eight-hour work day, and would need a ten- to fifteen-minute break every two hours. The nurse practitioner further opined that Ellis could lift ten pounds occasionally and less than ten pounds frequently; could rarely twist, stoop, crouch/squat, or climb ladders; could occasionally climb three to four stairs at a time; should avoid concentrated exposure to extreme temperatures, high humidity, wetness, cigarette smoke, and perfumes; and should avoid even moderate exposure to soldering fluxes, solvents/cleaners, fumes, odors, gases, dust, and chemicals. The nurse practitioner also noted that Ellis would likely be absent from work two days per month.

In October 2008, Ellis saw Dr. Preetham Jetty, who diagnosed generalized fluid accumulation and a heavy ongoing smoking habit with COPD, with previous placement on nocturnal home oxygen. Dr. Jetty noted that Ellis's lab work from his previous month's emergency room visit was normal, including an unremarkable chest x-ray. Noninvasive cardiac testing, including an echocardiogram, was normal. Ellis complained of some knots in his right lower leg, which Dr. Jetty described as "varicosities" and for which he encouraged a walking program, avoidance of prolonged standing, and a follow-up with Drs. Irick and Kabir. August 2009 chest x-rays showed hyperinflation and interstitial thickening, suggestive of COPD, and granulomatous calcifications in the left upper lung zone.

At Ellis's October 2009 hearing, he testified that he was 45 years old and he had emphysema, a heart condition, and stress and anxiety. Ellis said he stopped smoking four months prior to the hearing. He testified that he could not breathe, could not carry anything, could not walk very far, and had difficulty sleeping. Bending over cut off his oxygen. He could walk a block if he stopped halfway to rest, and he could lift a gallon of milk. He said he had problems

sitting, lying, or standing very long because his back hurt. Ellis testified that he could not even do a sedentary job because he had to take medications every two hours and coughed and spit up continuously.

A vocational expert testified at Ellis's hearing. The ALJ asked the vocational expert what jobs a person with Ellis's vocational and educational background could do. In doing so, the ALJ limited Ellis to light work with the ability to lift and carry 10 pounds frequently, 20 pounds occasionally; sit and/or stand for six of eight hours, and walk for four of eight hours, but not continuously; push and pull as restricted to lifting and carrying on occasions; occasionally stoop, crouch, and bend; but cannot climb ropes, ladders, or scaffolds; and that involved no more than concentrated exposures to unprotected heights and moving machinery; and required no more than moderate exposure to indoor temperature extremes, indoor dust, fumes, airborne irritants, and any indoor excess humidity. The vocational expert testified that such a person could perform the requirements of representative occupations such as courier, office helper, mail clerk, and cashier.

## II.     APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d) (1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b).[1] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

On review of the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.,* and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue,* 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to

---

[1] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

5

articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into his reasoning ... [and] build an accurate and logical bridge from the evidence to his conclusion." *Id.*

## IV. THE ALJ'S DECISION

The ALJ found that Ellis met the disability insured status requirements of the Act through December 31, 2009, and that Ellis had not engaged in substantial gainful activity since February 23, 2007, the alleged onset date.

The ALJ found that Ellis had the following severe impairments: chronic obstructive pulmonary disease ("COPD") and emphysema. The ALJ found that Ellis's high blood pressure, heart condition, back pain, and anxiety were non-severe. In finding that Ellis's anxiety was not a severe medically determinable mental impairment, the ALJ examined the four functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments. *See* 20 C.F.R. pt. 404, subpt. P, appx. 1. In the functional areas of daily living, social functioning, and concentration, persistence or pace, the ALJ found that Ellis had no more than mild limitation. In the fourth functional area, episodes of decompensation, the ALJ found that Ellis had not experienced any episodes of decompensation of extended duration.

The ALJ then went on to find that Ellis did not have an impairment or combination of impairments that met or medically equaled any of the impairments included in the Listing of Impairments. The ALJ then concluded that Ellis had the residual functional capacity ("RFC") to perform light work in the following manner: lift, carry, push and pull up to twenty pounds occasionally and ten pounds frequently, stand for six hours in an eight-hour workday, walk for

four hours in an eight-hour workday, and sit for six hours in an eight-hour workday. The ALJ limited Ellis's walking to the extent that, although he could walk four hours in an eight-hour workday, he was unable to do it all at one time. Ellis can stoop, crouch and bend on an occasional basis. He can never climb ladders, ropes, and scaffolds. Ellis is unable to perform work that includes anything more than concentrated exposure to unprotected heights and moving machinery. Ellis is unable to perform work that includes anything more than moderate exposure to indoor temperature extremes, indoor dust, fumes, and airborne irritants, and indoor excess humidity.

The ALJ then found that, given his RFC, Ellis could not perform any of his past work, but that he could perform other jobs that existed in significant numbers in the national economy and, therefore, had not been under a disability, as defined in the Act, from February 23, 2007, through the date of the ALJ's decision.

## V. DISCUSSION

Ellis advances several objections to the ALJ's decision; each is addressed below.

### A. Ellis's Need for Oxygen

Ellis argues that substantial evidence does not support the ALJ's implicit finding that Ellis did not need supplemental oxygen during the workday. As a result, Ellis argues, the ALJ's RFC, related adverse credibility finding, and step five decision are not supported by substantial evidence and must be reversed.

According to Ellis, the ALJ erred because he evaluated neither Dr. Irick's "prescription" for oxygen nor key evidence from Dr. Bakdash's exam. As an initial matter, the "prescription" written by Dr. Irick is merely a letter by the doctor stating that Ellis used oxygen. There is no indication in the letter that Dr. Irick was the doctor who prescribed its use; rather, the letter

7

merely states as a matter of fact that Ellis uses oxygen. Therefore, it was not error for the ALJ not to explicitly consider this letter.

Furthermore, the ALJ did not appear to dispute that Ellis sometimes used oxygen, as he noted that Ellis "presented at the hearing using oxygen." However, according to Ellis, the ALJ erred because he rejected Ellis's oxygen use when determining Ellis's limitations as to crouching, stooping, or bending. Ellis contends it was error for the ALJ to fail to consider the reason why he appeared at the examination without oxygen. According to the note from the exam, Ellis stated that he did not have a portable unit. However, this fact does not impugn the relevancy of the underlying findings from that examination – that is, Dr. Bakdash observed that, even without oxygen, Ellis was able to bend over without restriction.

Finally, Ellis argues that the ALJ erred when he did not inquire about jobs that would accommodate a need for supplemental oxygen. However, the only evidence Ellis designates in support of his oxygen use is derived from two medical treatment notes in contexts that suggest that the use was self-reported, as opposed to prescribed by the examining physician. It was not error for the ALJ to exclude oxygen use based on this meager evidence.

### B.     Ellis's Ability to Stand

Next Ellis argues that the ALJ's decision is not supported by substantial evidence because the ALJ did not consider Dr. Jetty's October 2008 "opinion" that Ellis should "avoid prolonged standing." Ellis notes that this recommendation is inconsistent with the light work prescribed in Ellis's RFC, which includes standing for six hours in an eight-hour workday.

Ellis misrepresents the context of Dr. Jetty's "opinion." In Dr. Jetty's letter to Dr. Irick, Dr. Jetty explains, "[Ellis] is complaining of some knots in his right lower leg. These are varicosities. He may need support hose. I encouraged a walking program, avoid prolong [sic]

standing, and I have asked him to follow up with you and Dr. Kabir." As such, Dr. Jetty's "opinion" is not couched in terms of prescribed work limitations, but rather is a suggestion to Ellis on how to deal with his varicose veins. This recommendation says nothing about "the most [Ellis] can still do despite his limitations." 20 C.F.R. § 404.1545(a). As a result, it was not error for the ALJ to disregard this recommendation and the ALJ's RFC description of Ellis's standing limitations is otherwise supported by substantial evidence from Dr. Bakdash's June 2006 examination.

### C.  Work as a Courier

Ellis argues, and the Commissioner apparently does not dispute, that the ALJ "essentially" restricted Ellis to indoor work, which restriction is in direct conflict with the ALJ's finding that Ellis could work as a courier, a position that includes outdoor work some of the time. Ellis misreads the ALJ's RFC. The ALJ included the following restriction in Ellis's RFC: "The claimant is unable to perform work that includes anything more than moderate exposure to indoor temperature extremes, indoor dust, fumes, and airborne irritants, and indoor excess humidity." This restriction cannot be fairly read to be a "restriction to indoor work." Rather, the RFC says nothing about whether Ellis can work indoors, outdoors, or both; it says merely that, if he works inside, he cannot do work that includes *anything more* than moderate exposure to certain indoor air conditions. There is therefore no apparent conflict between the ALJ's RFC and the vocational expert's testimony requiring clarification and the ALJ's decision is not error on this point.

### D.  Record Defect

Finally, Ellis notes that the administrative record submitted by the Commissioner omits two submissions Ellis made to the Appeals Council on May 24, 2011, and June 27, 2011. Ellis

9

therefore requests that this Court consider his submissions part of the administrative record. The Commissioner opposes Ellis's request on the grounds that Ellis has shown how these documents are material to the ALJ's decision, but Ellis has since clarified that he does not argue that these documents are material. Rather, he simply "contend[s] that a complete administrative record under sentence three of 42 U.S.C. 405(g) includes his written communications with the Appeals Council." Given this clarification, the Court sees no problem in granting Ellis's request.

## VI.   CONCLUSION

In this case, the ALJ satisfied his obligation to articulate the reasons for his decision, and that decision is supported by substantial evidence in the record. Accordingly, the decision of the ALJ is **AFFIRMED**.

It is further **ORDERED** that Ellis's May 24, 2011, and June 27, 2011, submissions to the Appeals Council (attached as exhibits to his brief at docket number 17) are hereby considered part of the administrative record.

SO ORDERED:       12/11/2012

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.